Case 1:21-cr-00642-JDB   Document 1-1

Case: 1:21-mj-00620
Assigned to: Judge Meriweather, Robin M.
Assign Date: 9/30/2021
Description: COMPLAINT W/ ARREST WARRANT

## STATEMENT OF FACTS

Your affiant, James G Moran Jr. is a Special Agent of the Federal Bureau of Investigation ("FBI") and has been so employed since 2017. From 2017 to the present, I have been assigned to the Washington Field Office, and I am currently tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of violations of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of

violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

On January 9, 2021, the FBI received a tip that DARRELL NEELY entered the U.S. Capitol building on January 6, 2021. After receiving the tip, the FBI identified NEELY in open source video footage from the U.S. Capitol building on January 6, 2021. Screenshots of the open source video footage are below, and NEELY is circled in red. In the first image below, NEELY is inside the U.S. Capitol building and appears to be holding a marijuana cigarette. In the second image below, NEELY is exiting the U.S. Capitol building and appears to be holding a cell phone.




The FBI also identified NEELY in U.S. Capitol CCTV footage from inside the U.S. Capitol building on January 6, 2021. Screenshots of the CCTV footage are below. NEELY is circled in red.




The FBI compared the above screenshots of NEELY with a photograph of NEELY obtained from law enforcement internal databases and determined that the screenshots above matched the photograph obtained from the law enforcement database.

The FBI also interviewed three witnesses, Witness 1, Witness 2, and Witness 3, each of whom worked with NEELY at his radio station, Global Enlightenment Radio Network (GERN). Witnesses 1, 2, and 3 were all on two separate calls with NEELY on January 6, 2021. The first call occurred between approximately 2:45 p.m. and 4:00 p.m. The call began as a video call and seemingly became an audio call. The second call was a video call and began around 5:30 p.m. In addition, on January 6 and 7, 2021, Witnesses 1, 2, and 3, NEELY, and others participated in a group chat on Facebook Messenger.

Witness 1 stated that, on the first video call, NEELY went inside the U.S. Capitol building and narrated events happening inside the building. Although Witness 1 did not see NEELY inside the Capitol building, Witness 1 recognized NEELY's voice as he narrated from inside the building. Witness 1 stated that, on the second video call occurring after NEELY had left U.S. Capitol grounds, NEELY displayed china plates that he insinuated were from the Capitol building and a jacket that he claimed was a U.S. Capitol Police jacket.

While on the second call, Witness 1 also stated that NEELY displayed a black/dark-colored jacket with a silver badge on the left front and white lettering on the back and that NEELY claimed it was a U.S. Capitol Police jacket. In addition, on the second call, Witness 1 saw NEELY display two china plates that were cream and maroon in color, with either a symbol or lettering in the center of each plate. Witness 1 thought NEELY insinuated that the items were taken from inside the Capitol building.

Unlike Witness 1, Witness 2 stated the quality of NEELY's first video call deteriorated and that NEELY eventually lost service. According to Witness 2, before the first video call ended, NEELY said the crowd was going inside the Capitol building and that he was going to follow the crowd. Witness 2 also stated, on the second video call later in the day, that NEELY mentioned he had acquired a jacket as a souvenir. In addition, Witness 2 participated in the January 6 and 7, 2021, group chat on Facebook Messenger with NEELY and others. On January 7, 2021, in the Facebook Messenger group chat, NEELY sent, and Witness 2 viewed, a photograph of china plates, off-white to tan in color, with an eagle in the center. Based on the communications from NEELY that day, Witness 2 believed NEELY was claiming to have stolen the china plates while in the U.S. Capitol building. Witness 2 did not observe a photo of the jacket.

Witness 3 was also on both video calls on January 6, 2021. According to Witness 3, while on the video call, NEELY said he was going inside the U.S. Capitol building. Witness 3 saw NEELY during the evening of January 6, 2021, and, at that time, NEELY was in possession of four china plates and a USCP jacket, badge, name tag, and baseball cap. According to Witness 3, NEELY boasted that he had attacked a USCP officer and had taken the USCP jacket, badge, name tag, and baseball cap from the officer. Witness 3 said NEELY also boasted about taking the china plates from the Capitol building. According to Witness 3, NEELY continued to boast about taking these items during the second call in the evening of January 6, 2021.

In the following days, NEELY broadcast about the events on his YouTube channel. The FBI has viewed several of these broadcasts. In one of the video broadcasts, NEELY was wearing a U.S. Capitol Police baseball cap. A screenshot of NEELY wearing the U.S. Capitol Police baseball cap is below.



The FBI subsequently interviewed the USCP officer to whom these items belonged (Officer 1). Officer 1 stated that he/she removed these items from his/her person during decontamination from lacrimal spray and, thereafter, could not locate these items.

In addition, your affiant and one other FBI special agent interviewed NEELY on two separate occasions. During the interviews, NEELY stated he went to the Capitol to film the events because he felt the events were newsworthy. He also admitted to entering the U.S. Capitol building. NEELY showed the interviewing agents several videos on his cell phone that he had taken during the events. NEELY allowed the agents to take photographs of the video. One such photograph is below.



NEELY took photographs while he was inside the Capitol, and he sent these photographs to the FBI. One of the images, a picture that NEELY took of himself on Capitol grounds, is copied below.

4



After these interviews, your affiant again reviewed the above images from open source video and CCTV footage. Based on my observations of NEELY during the in-person interviews, I have determined that NEELY is the individual in the photographs above, sometimes circled in red.

The FBI also reviewed cellular tower records. NEELY provided his phone number, ending -3984, to the interviewing agents. The AT&T cellular telephone number, ending -3984, was cross-referenced against cellular tower records that were obtained by the FBI via a search warrant served on AT&T for January 6, 2021. In and around the time of the incident, the cellular telephone associated with NEELY's phone number ending -3984 was identified as having utilized a cell site consistent with providing service to a geographic area that included the interior of the U.S. Capitol Building.

Your affiant submits there is also probable cause to believe that NEELY violated 18 U.S.C. §§ 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that NEELY violated 40 U.S.C. §§ 5104(e)(2)(D) and (G) which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly

conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

  Finally, your affiant submits there is probable cause to believe that NEELY violated 18 U.S.C. § 641, which makes it a crime for a person to embezzle, steal, purloin, or knowingly convert to his use or the use of another, or without authority, sell, convey or dispose of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or receive, conceal, or retain the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted.

_____
James G Moran Jr.
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 30th day of September, 2021.

_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE