IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 21-CR-642(JDB) |
| | ) | |
| | ) | |
| DARRELL NEELY | ) | |

**<u>DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE</u>**

The Defendant, Mr. Darrell Neely, by and through his attorney Kira Anne West, in support of this motion, the Defendant asks for a hearing and submits the following:

**BACKGROUND**

The Defendant, Mr. Neely, is fifty two years old and a father, and a son. He is also a proud American. He is a radio host with his own network that he has hosted for many years. At the time of his arrest on October 18, 2021, he was working full time in this capacity.

**PROCEDURAL HISTORY**

On October 18, 2021, officers arrived at Mr. Neely's home armed with an arrest warrant and a search warrant. Although they searched the house, they took nothing. They took Mr. Neely to the local jail and questioned him. After discussion and advisement of his rights, Mr. Neely cooperated with the officers and gave a recorded and videotaped statement. What makes this case different than most is that it appears Mr. Neely gave 3 different statements to the FBI on three different dates.

On October 22, 2021, Mr. Neely was charged by criminal information with five misdemeanor charges related to his activities on January 6, 2021. The criminal complaint was

1

based in large part on Mr. Neely's unmirandized statements.

## STATEMENT OF FACTS

First, it appears Mr. Neely was interviewed by S/A Moran on March 2, 2021 at the FBI WFO. He was not mirandized. Mr. Neely discussed his broadcasting live from the Capitol with the officers. Critically, after this meeting, Mr. Neely forwarded to the agents links, videos and images to S/A Moran. Second, Mr. Neely was interviewed again by S/A Moran again at the FBI WFO. This time in July, 2021. Mr. Neely provided the agents with more video evidence. Armed with this evidence, a criminal complaint was sworn by S/A Moran who applied for an arrest and search warrant of Mr. Neely. Mr. Neely was arrested October 18, 2021, waived his rights in writing, *See* Exhibit 1, waiver form, and again gave his third statement, this time, recorded. *See* exhibit 2, recorded statement.1 And according to the FBI, Mr. Neely was Mirandized before giving a statement.

It also appears that Mr. Neely was given the impression by FBI agents that he was working for them, somehow in the capacity of an informant-not on others, but on the general situation.

The crux is whether or not Mr. Neely's waiver of his right to remain silent was voluntary and knowing starts before his questioning. The defense believes that officers and agents engaged Mr. Neely in conversation about the J6 activities before he was mirandized, Mr. Neely agreed to cooperate, and then they read him his rights and got him to sign a waiver form. This is commonly known in Texas as "the Texas two-step" method of interrogation, which was later litigated in *Missouri v. Seitbert,* discussed *infra.* A hearing is necessary to determine how it is

---

1 This recorded statement will be delivered to the Court electronically through the Court's email or dropbox system, whichever the Court prefers.

that the FBI led Mr. Neely to believe he was working for the FBI.

Law: statements

The Supreme Court has determined that the Fifth and Fourteenth Amendment's prohibition against compelled self-incrimination requires that custodial interrogation be preceded by advice to the Defendant that he has the right to remain silent and the right to the presence of an attorney. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Miranda warnings are required before custodial interrogation begins. *Id*. at 444-45.  Before it can use any statements produced through custodial interrogation, the government has the burden to show that. "the defendant 'voluntarily, knowingly and intelligently' waived [these] rights." *J.D.B. v. North Carolina*, 564 U.S. 261, 269-70 (2011).  Moreover, the Government must show the statements were obtained without coercion or improper inducement. *Colorado v. Connolly*, 479 U.S. 157 (1986). Should a defendant make a statement, a court must examine the voluntariness of the particular statement and test whether the statement was freely given under the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *see also, Malloy v. Hogan*, 378 U.S. 1, 6- 7 (1964) (the constitutional inquiry is not whether the conduct of the law enforcement officers in obtaining the confession was shocking, but whether the confession was free and voluntary); *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). The government bears the burden of proving by a preponderance of the evidence that a statement allegedly made by a defendant was voluntary, or fits into exceptions to this general rule. *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *United States v. Garcia*, 780 F. Supp. 166, 171 (S.D.N.Y. 1991). Without a valid Miranda waiver, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions. *Pennsylvania v. Muniz,* 496 U.S. 582, 601-02 & n. 14.

Accordingly, the questioning here by law enforcement officers did serve to elicit incriminatory admissions. The government bears the burden to demonstrate a knowing and intelligent waiver of the privilege against self-incrimination when a defendant raises a colorable claim of coercion. *See Miranda* 384 U.S. at 475; 18 U.S.C. § 3501(b) (setting forth criteria for determining when a confession is "voluntary" or "coerced.") And when determining voluntariness of a statement, the "totality of the circumstances" must be examined, including the defendants individual characteristics and background, the setting in which the statement occurred, and the details of the interrogation or interview. *United States v. Elie*, 111 F. 3d 1135, 1143-44, (4th Cir. 1997); *United States v. Pelton*, 835 F.2d 1067, 1071-72 (4th Cir. 1987). *Accord United States v. Van Metre*, 150 F 3d 339, 348-49 (4th Cir. 1998).

Most importantly, failure to give Miranda warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained. *Missouri v. Siebert*, 124 S.Ct. 2601, 2602 (2004). This "question first" strategy by law enforcement was summarily struck down by the Court. *Id.* The defendant in Siebert was specifically questioned without a miranda warning by the officer in hopes that a confession would be forthcoming. It was, and then after a short break, the officer mirandized the defendant and then questioned her and got a confession. A plurality of the Court held that the confession was invalid as it stemmed from the first, unmirandized statement.

**ARGUMENT**

4

First, this confession was obtained by improper inducement. The agent started questioning Mr. Neely before any warning was given. Second, Mr. Neely believed that he was actually helping law enforcement and was given the impression that he would not be charged. Third, Mr. Neely's limited education and understanding of the criminal justice system shows that he clearly did not understand the consequences of talking to the FBI.

<u>Motion to suppress evidence:</u>

<u>Facts:</u>

Mr. Neely is alleged to have taken several items from the Capitol on January 6, 2021. These items were if anything, abandoned property. *See, California v. Greenwood*, 486 U.S. 35 (1988). These facts are still being developed as the government only gave the defense several interior videos of Mr. Neely on Friday, August 5, 2022. Again, a hearing is needed to discern the facts here.

Mr. Neely stands on his position that his statements made to law enforcement officers (1) were not voluntarily given by him, and/or (2) the Miranda waiver was improperly taken by law enforcement officers. In this regard, Mr. Neely is asking this court to find that his subsequent waiver during his third interview was not voluntary, knowing, and intelligent "under the totality of the circumstances," *See United States v. Straker*, 800 F.3d 570, at 624-25 (D.C. Cir. 2015). Mr. Neely also asks the court to suppress physical evidence found on social media.

                                                Respectfully submitted,

                                                KIRA ANNE WEST

                            By:       /s/

Kira Anne West  
DC Bar No. 993523  
712 H Street N.E., Unit 509  
Washington, D.C. 20002  
Phone: 202-236-2042  
kiraannewest@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify on the 8th day of August, 2022, a copy of same was delivered to the parties of record, by email pursuant to the Covid standing order and the rules of the Clerk of Court.

                                                  /S/

                                         Kira Anne West