UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 21-cr-642 (JDB) |
| v. | : | |
| | : | |
| DARRELL NEELY, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL ACCESS
TO NON-PUBLIC AREAS OF THE CAPITOL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to Defendant Darrell Neely's Motion To Compel Access to Non-Public Areas of the Capitol (the "Motion") (ECF No. 29). In the Motion, Defendant seeks an order compelling the Government to allow his counsel access to certain parts of the Capitol and for permission to photograph and measure those areas. The Motion should be denied for three independent reasons. First, the Capitol is not in the possession, custody, or control of the prosecution team. Second, Defendant has not shown that the requested inspections are material to his defense. Third, Defendant's request to take detailed photographs, measurements, and video of the Capitol would create a risk to the continued security of the Capitol.

**BACKGROUND**

*1. Case Facts*

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress convened in the United States Capitol building. The Joint Session assembled to debate and certify the vote

of the Electoral College of the 2020 Presidential Election.  With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol.  At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over erected barricades.  The crowd, having breached police officer lines, advanced to the exterior façade of the building.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol.  At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.

Defendant Darrell Neely entered the Capitol through the Senate Wing Door at approximately 2:24 PM ET, as shown in the photograph below.



Defendant then proceeded to roam the Capitol for approximately 70 minutes. As shown in the photographs below, he smoked a cigarette, spent time in the Crypt, and exited the Capitol through the Memorial Door at approximately 3:30 PM.









At some point during his time in the Capitol, Defendant found items belonging to a U.S. Capitol Police Officer, including a jacket and hat, and stole those items. The items belonged to an officer who had removed them after being sprayed by an unknown substance. In a post-arrest interview with law enforcement, Defendant acknowledged that he took these items from the Capitol and described them as his "memorabilia."

2. *Discovery Related to the U.S. Capitol Building*

The Government has provided the defense with extensive discovery, in the form of organized crime scene walk throughs and thousands of hours of video footage from January 6, 2021, that enable the defendant to "inspect" the U.S. Capitol. In this case, and in all January 6th cases, the government has provided the defense with access to over 24,000 files consisting of USCP closed circuit video (CCV) footage, body-worn cameras (BWC) from multiple law enforcement agencies, U.S. Secret Service surveillance footage, videos found from public sources such as YouTube, citizen sleuth organizations, and news media, and videos recovered from searches of cameras, computers, and phones of other January 6 defendants. For context, the video files, which were provided to the defense via evidence.com, amount to over nine terabytes of information and would take 102 days to view. The Government has, therefore, assisted defense counsel in this case find relevant video footage from these sources. The Government has also produced detailed maps and floorplans of the Capitol building.

Finally, U.S. Capitol Police provided multiple "crime scene walkthroughs" for defense counsel involved in January 6th riot cases. Defense counsel were notified of the scheduled walkthrough dates ahead of time. The tours were approximately two hours long and went to a predetermined list of public and non-public areas within the Capitol. Defense counsel were permitted to bring one defense investigator so that the investigator can provide trial testimony

about the tour and what was seen.

As detailed in the Declaration of Sean Gallagher, U.S. Capitol Police Acting Assistant Chief for Uniformed Services (Exhibit 1), the walkthroughs were designed to ensure defendants are able to prepare for their defense while also protecting the continued security of the U.S. Capitol. Accordingly, there were certain conditions in place for those participating in the walkthroughs. For example, defense counsel were permitted to take photographs in public areas of the Capitol but were not permitted to do so in non-public areas of the Capitol. Counsel for the defendant indicate that they have gone on two of the Capitol walkthroughs. (Motion ¶ 2.) Another tour of the Capitol is currently scheduled for August 27, 2022, and defense counsel has been invited to attend.

3. *The Defense Requests*

In the Motion, Defendant requests access to the Capitol for two reasons: (1) to view the "decontamination area" where the officer left his belongings that were later taken by Defendant (Motion ¶¶ 6, 8); and (2) to take photographs, videos, and measurements of the path that Defendant took through the Capitol (Motion ¶¶ 11-14).

**ARGUMENT**

Defendant's Motion should be denied for three independent reasons. First, the Capitol is not in the possession, custody, or control of the prosecution team. Second, Defendant has not shown that the requested inspections are material to his defense. Third, Defendant's request to take detailed photographs, measurements, and video of the Capitol would create a risk to the continued security of the Capitol.

6

I.      **Legal Standard**

The Federal Rules of Criminal Procedure provide that, upon a defendant's request, the government must permit the defendant to "inspect and to copy or photograph" documents or objects, including buildings or places, that are within the government's possession, custody or control. Fed. R. Crim. P. 16(a)(1)(E). Rule 16 establishes "'the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases.'" *United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003) (quoting Fed. R. Crim. P 16 advisory committee's note to the 1974 amendments). Rule 16 does not, however, bestow on the defendant a right to unrestricted access to all documents and objects within the government's possession, custody, or control. *See United States v. Maranzino*, 860 F.2d 981, 985–86 (10th Cir. 1988) ("Rule 16 does not authorize a blanket request to see the prosecution's file"). Rather, it applies to those documents and objects that (1) are "material to preparing the defense;" (2) the government intends to use in its case-in-chief at trial; or (3) were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E). Rule 16 also provides mechanisms for a judge to regulate discovery. "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).

Demonstrating materiality under Rule 16 "is not a heavy burden." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993). Evidence is material under Rule 16 "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Marshall,* 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting *Lloyd*, 992 F.2d at 351). Material evidence includes both exculpatory and inculpatory evidence. *Id*. Nevertheless, to show

7

materiality, the defense must demonstrate that the evidence bears "some abstract logical relationship to the issues in the case" and would enable "the defendant significantly to alter the quantum of proof in his favor." *Lloyd*, 992 F.2d at 351 (internal quotation omitted); *see also United States v. Slough*, 22 F. Supp. 3d 1, 4-5 (D.D.C. 2014) (observing that the movant bears the burden of demonstrating that the requested discovery bears "more than some abstract logical relationship to the issues in the case").

## II. The Prosecution Team Does Not Have Possession, Custody, or Control Over the Areas the Defendant Wishes to Inspect

The Capitol is under the control of the Legislative Branch. The crime scene walkthroughs for the defense—and the walkthroughs for Assistant United States Attorneys—require permissions from numerous officials in the Legislative Branch. Although USCP is part of the prosecution team in January 6 cases and leads these tours, the Capitol itself is not in the Executive Branch's control. As a result, the Assistant United States Attorneys prosecuting January 6th cases and the federal agents investigating the cases need to ask for official tours of the building and are subject to restrictions in the building.

"[T]he court cannot order the government to allow defense counsel to inspect that which the government does not possess or control." *See United States v. Hawk*, No. CR 12-50044-JLV, 2013 WL 773908, at *2 (D.S.D. Feb. 28, 2013) (denying motion to compel inspection of crime scene located in victim's private residence, finding it is not in possession, custody, or control of the government, despite victim's cooperation with the prosecution) (*objections overruled sub nom. United States v. Yellow Hawk*, No. CR 12-50044-JLV, 2013 WL 1563230 (D.S.D. Apr. 12, 2013). Because the Capitol is not in the possession, custody, or control of the prosecution team, the defendant's motion to compel should be denied.

### III. The Requested Photographs, Recordings, and Measurements Are Not Material.

The photographs, recordings, and measurements that Defendant seeks are not materials that the government will use in its case-in-chief and are not materials that were obtained from or belong to the defendant. As a result, the defendant must show that these items are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). The defendant fails to do so. The CCV showing where the defendant was on January 6th remain the most accurate evidence; any additional videos taken after January 6th would not add to the "quantum of proof" in the defendant's favor. *See United States v. Sutton*, No. CR 21-0598 (PLF), 2022 WL 1202741, at *11 (D.D.C. Apr. 22, 2022) (denying defendant's request for recordings from "any and all cameras" maintained by law enforcement to monitor the area a crew operated in when the government already collected and disclosed all video footage of the incident for which the defendant was charged).

### A. The Decontamination Area Would Not Be Revealed By Providing Access to the Capitol, Nor Is Access to this Area Material.

Defendant's first request is to access the "decontamination area" where the officer took off his belongings after being sprayed. Defendant argues that the location of this area is material to his defense. (Motion ¶ 6.) Perhaps so. But Defendant does not explain how a bespoke tour of the Capitol would reveal this location. This "decontamination area" is not marked off or otherwise identifiable from a tour. The best evidence of the location of this area is the video and photographic evidence taken on January 6.

Moreover, Defendant never explains why *access* to this area is material to his defense. Defendant does not point to any evidence or information that would be obtained from accessing this area. Again, if there something about this area that is material to his defense, the videos and

9

photographs taken on January 6 are material, not anything that counsel would view or do on a tour now. Accordingly, Defendant's request for access to the Capitol to locate and access the "decontamination area" should be denied.

### B. Additional Photographs, Video, and Measurements of Defendant's Pathway through the Capitol Are Not Material.

Defendant's second justification for access to the Capitol is a purported need to photograph, videotape, and take measurements of the pathway that he took through the Capitol. (*See* Motion ¶¶ 11-14.) Again, however, Defendant provides no explanation for why any additional photographs, video, or measurements are material to his defense. To start, the Government has already produced volumes of video and photographic evidence regarding the locations of doors, hallways, and other objects in the Capitol. Defendant argues that this evidence is incomplete because "the videos do not show the relative distances traveled by the defendant" and that he "should be able to inspect and photograph these areas in order to mount his defense and give an accurate depiction for the trier of fact of the relative location of doorways and exits in the building that day." (Motion ¶ 12.) Defendant does not explain, however, why any of this additional information is material. The requested measurements and additional videos would not negate or tend to negate any element of any of the charged offenses. For example, Defendant does not explain how this information would negate or tend to negate his physical presence in the Capitol or the fact that he took items from the Capitol (both of which he confessed to). In short, there is nothing material about the requested measurements and photographs regarding Defendant's path through the Capitol, especially in light of the reams of video and photographs already produced in discovery. In addition, the Capitol tours—without the requested measurements or photographs and recordings of non-public areas—provide a

10

sufficient opportunity for the defense to uncover admissible evidence, aid in witness preparation, corroborate testimony, or assist with impeachment or rebuttal. *Marshall*, 132 F.3d at 68. In sum, this request should be denied.

### IV. Ensuring the Security of the Capitol Is Good Cause to Deny the Defendant's Request.

Protecting the Capitol building and those within the building is good cause for the Court to deny the defendant's request. Courts in this Circuit have consistently held that the protection of the Capitol Building and prominent government officials constitutes a significant government interest. *See, e.g.*, *United States v. Mahoney*, 247 F.3d 279, 286 (D.C. Cir. 2001) (stating that the government has a significant interest in "'ensuring public safety and order'"); *Mahoney v. U.S. Marshals Serv.*, 454 F. Supp. 2d 21, 33 (D.D.C. 2006) (noting that "armed gunmen have stormed the Capitol building more than once") (citing *United States v. Grace*, 461 U.S. 171, 182 (1983)). The photographs, recordings, and measurements the defendant seeks also fall within the definition of "security information." Pursuant to 2 U.S.C. §1979, any "security information" related to the Capitol Police can only be released to third parties with the approval of the Capitol Police Board. Security information is defined as information that "is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds."

Defendant's requests would create a risk to the continued security of the Capitol. Information related to the measurements and photographs of the non-public areas of the Capitol would clearly be considered security information and subject to the approval requirements required by 2 U.S.C. § 1979. Additionally, as discussed in Exhibit 1, permitting the

11

measurements that the defendant seeks would provide a wealth of information to an adversary who might wish to calculate blast distances,[1] the ability to fly a drone within the building,[2] or how large of a group could quickly pass through the hallways,[3] to name but a few security risks. Allowing measurements and photographs and recordings of non-public areas of the Capitol will also expose security features that are embedded in the physical structure of the Capitol— including features that had to be changed after the January 6th riot.

Finally, providing the defense with the opportunity to take measurements and photographs and recordings in non-public areas of the Capitol would be a heavy burden on USCP and consume USCP resources that should instead be devoted to the protection, security, and safety of the U.S. Capitol and those within the Capitol. The Capitol is not open to the general public[4] and is a 24 hours a day, 7 days a week work place for members of Congress and their staff. The Capitol is therefore protected 24 hours a day, 7 days a week, both inside and outside, by the USCP. The time spent by USCP officers in arranging for the defendant's taking of measurements and photographs is time that would otherwise be devoted to protecting the Capitol and those inside of it. Furthermore, if the Court were to order that the defendant must be permitted to take the requested measurements and photographs and recordings of non-public areas of the Capitol, it is highly likely that many other January 6 defendants would seek similar

---

[1] The U.S. Capitol was bombed on November 7, 1983.
[2] A Massachusetts man was arrested in September of 2011 for planning to fly a drone into the U.S. Capitol and the Pentagon.
[3] Defendants in current January 6 cases have been accused of using a "stack formation" to move up the steps of the Capitol
[4] In order to enter the Capitol, one must either be a Member of Congress, Congressional staff, or be escorted by one. Any visitors on official business must proceed to the Appointments Desk where their visit will be verified. With the exception of Members, their spouses or official law enforcement, all visitors to the U.S. Capitol, including staff, must go through security screening that includes a search for weapons. The U.S. Capitol is not open to the general public without an appointment and tours of the U.S. Capitol are on a pre-determined route by credentialed tour guides.

orders, and USCP would have to spend valuable hours and manpower to provide for each individual defendant's requested measurements, photographs, and recordings. In light of these significant security concerns and risks regarding the Capitol, there is good cause to deny the motion.

## CONCLUSION

For the foregoing reasons, the motion to compel should be denied.

By:

/s/ Joseph McFarlane
PA Bar No. 311698
United States Department of Justice
1400 New York Ave NW
Washington, D.C. 20005
Desk: (202) 514-6220
Mobile: (202) 368-6049
joseph.mcfarlane@usdoj.gov

/s/ Andrew J. Tessman
ANDREW J. TESSMAN
Assistant United States Attorney
District of Columbia – Detailee
West Virginia Bar No. 13734
300 Virginia Street
Charleston, WV 25301
(304) 345-2200
Andrew.Tessman@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that a copy of the Government's Response was served on all counsel of record via the Court's electronic filing service.

                            */s/ Joseph McFarlane*
                            JOSEPH MCFARLANE
                            Trial Attorney

Date: August 21, 2022