**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 21-cr-642 (JDB)** |
| **v.** | : | |
| | : | |
| **DARRELL NEELY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO SUPPRESS STATEMENTS AND EVIDENCE**

The defendant's video and audio-recorded post-arrest statement should not be suppressed. The defendant was advised of his constitutional rights, signed an FBI Advice of Rights form, and answered the agent's questions during a 35-minute interview.  The defendant was advised at the outset that he was under arrest and that:  (1) he had the right to remain silent; (2) he had the right to talk to lawyer before being asked any questions, (3) he had the right to have a lawyer with him during the questions, (4) that if he could not afford a lawyer, one would be appointed to him before any questioning, if he wanted, and (5) that if he decided to answer questions without a lawyer present, he could stop answering questions at any time.

Despite the foregoing, the defendant seeks to suppress his custodial statement based on an illogical purported belief that he was led to believe that he was informant for the FBI. However, the defendant knew that he was under arrest, was presented with the charges against him, and was in handcuffs for the entire 35-minute interview.

Because the defendant never invoked his right to remain silent or to have a lawyer present, the motion to suppress should be denied.

1

**FACTUAL BACKGROUND**

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress convened in the United States Capitol building.  The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election.  With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol.  At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over erected barricades.  The crowd, having breached police officer lines, advanced to the exterior façade of the building.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol.  At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.

Defendant Darrell Neely entered the Capitol through the Senate Wing Door at approximately 2:24 PM ET, as shown in the photograph below:



Defendant then proceeded to roam the Capitol for approximately 70 minutes.  As shown in the photographs below, he smoked a cigarette, spent time in the Crypt , and exited the Capitol through the Memorial Door at approximately 3:30 PM.









At some point during his time in the Capitol, Defendant found items belonging to a U.S. Capitol Police Officer, including a jacket and hat, and stole those items. The items belonged to an officer who had removed them after being sprayed by an unknown substance.

On March 2, 2021, and on July 6, 2021, the defendant participated in voluntary interviews with the FBI. *See* Exhibits 3 & 4. In both interviews, the defendant was not under arrest, was advised of the voluntary nature of the interview prior to its commencement and was free to leave at any time. *See id*.

On October 18, 2021, the defendant was arrested in Washington, D.C., placed in handcuffs, booked, and consensually participated in a post-arrest interview. The interviewing officers informed the defendant of his constitutional rights, and the defendant signed an FBI Advice of Rights form, attached hereto as Exhibit 1. When the defendant and interviewing agents entered the room, the defendant acknowledged that he had waived his rights and was presented with a copy of

the criminal complaint against him. The defendant then participated in a 35-minute custodial interview while still in handcuffs. During the post-arrest interview, the defendant admitted to entering the U.S. Capitol building, acknowledged that he took the items from the building, and described them as his "memorabilia." *See* Exhibit 2.

At no point during the questioning did the defendant ever invoke his right to remain silent, talk to a lawyer, have a lawyer present, or have a lawyer appointed to him.  The tone of the interview was conversational and non-threatening.  The defendant never expressed any confusion and showed no signs of distress.

## LEGAL STANDARD

The Fifth Amendment provides that "[n]o person … shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. To safeguard that right, the police must warn a suspect who is going to be questioned while in custody that he "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). While Fourth Amendment waivers need only be voluntary, *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), a *Miranda* waiver must be both intelligent and voluntary. *Miranda v. Arizona*, 384 U.S. 439, 471-72 (1966).

These rights need not be word for word from the *Miranda* ruling. Substance, not form, is the test. *See, e.g.*, *Florida v. Powell*, 559 U.S. 50, 64, (2010) ("We decline to declare its precise formulation necessary to meet *Miranda's* requirements. Different words were used in the advice [the defendant] received, but they communicated the same essential message."); *Duckworth v. Eagan*, 492 U.S. 195, 202 (1989) ("We have never insisted that *Miranda* warnings be given in the

exact form described in that decision."); *California v. Prysock*, 453 U.S. 355, 359, (1981) ("*Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures.").

A suspect who wishes to invoke his rights must do so unambiguously. *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) ("There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously."); *Davis v. United States*, 512 U.S. 452, 461-62 (1994) ("If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."). This requirement "results in an objective inquiry that avoids difficulties of proof and provides guidance to officers on how to proceed in the face of ambiguity." *Berghuis*, 560 U.S. at 381. Where a suspect says something ambiguous or equivocal, it is not only permissible but often "good police practice" to clarify whether he wants to invoke his rights. *Davis*, 512 U.S. at 461; *accord Berghuis*, 560 U.S. at 381. Where the suspect decides to talk, his statements may be admitted without violating the Fifth Amendment if the government shows by a preponderance of evidence that he knowingly, intelligently, and voluntarily waived his rights. *See Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986).

The Supreme Court has indicated that the inquiry into whether a statement is obtained voluntarily should be determined with reference to the totality of the circumstances. In determining whether a defendant's will was overborne in a particular case, the Court has "assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, (1973). The ultimate question is whether the suspect's "will [has been] overborne" by "coercive police activity." *Colorado v. Connelly*, 479 U.S. 157, 167, 178 n.2 (1986). If there is no coercive police activity, a statement is considered voluntary. *Connelly*, 479 U.S. at 167; *Baird v. United States*, 851 F.2d 376, 382 (D.C.

Cir. 1988). *Compare United States v. Hallford*, 816 F.3d 850, 856 (D.C. Cir. 2016) (no coercive police conduct where defendant agreed to an interview with agents, agents asked "straightforward" questions in "conversational tones"; defendant was not restrained; interview lasted less than an hour; defendant questioned in a hospital and not in a police-dominated atmosphere; defendant was not tricked into answering questions; defendant's refusal to consent to a search of his vehicle showed his will was not overborne), *with Little v. United States*, 125 A.3d 1119, 1133 (D.C. 2015) (defendant chained to the ground and chair, denied counsel when requested, threatened that he would be raped if he went to jail, and accused of crimes officers knew he did not commit, was coerced into confessing).

## I.  The Defendant's Post-Arrest Statement was Voluntary and Preceded by a Knowing, Voluntary and Intelligent Waiver of his Constitutional Rights

The defendant knowingly, intelligently, and voluntarily waived his Fifth Amendment rights. The defendant's motion to suppress presents no basis to conclude that the custodial interview was involuntary, and that the waiver was not knowing and intelligent.

The defendant first suggests that he was led to believe that he was an informant to the FBI. ECF No. 27 at 2. This assertion has no basis in fact. The defendant voluntarily offered information to the FBI on two occasions prior to be arrested on October 18, 2021. *See* Exhibits 3 & 4. The defendant's motion only seeks to suppress statements made during the custodial interview on the day of his arrest, October 18, 2021. On that date, the defendant was immediately informed that he was under arrest, placed in handcuffs, and processed at the FBI Washington Field Office (WFO), in Washington, DC. *See* Exhibit 2. While being processed, the defendant was advised of his Constitutional rights via the FBI FD-395 "Advice of Rights" form. *See id*. The defendant then signed the FD-395 form, which was witnessed by two FBI Special Agents. *See* Exhibit 1.

The defendant and the interviewing agents then entered an interview room. The defendant acknowledged that he had signed the FD-395 form, and he was presented with a copy of the criminal complaint containing the charges against him.[1] A custodial interview was conducted for approximately 35 minutes. At no point during the questioning did the defendant ever invoke his right to remain silent, talk to a lawyer, have a lawyer present, or have a lawyer appointed to him. The tone of the interview was conversational and non-threatening.  The defendant never expressed any confusion and showed no signs of distress. Given all these circumstances, there is no basis to conclude that the defendant reasonably believed he was an informant to the FBI during his post-arrest interview with the FBI.

The defendant next suggests that questioning began prior to any warnings being given. ECF No. 27 at 5. This is false, as questioning did not begin until after the FD-395 had already been signed, and the defendant had acknowledged that he had signed it prior to entering the interview room.

Finally, the defendant suggests that he has a limited education and limited understanding of the criminal justice system. This is also false, as the defendant has at least a high school education, claims to have attended Brown University, and has been exposed to the criminal justice system since at least 1993, with arrests and charges for multiple assaults, thefts, threats, firearms violations, narcotics possession, and contempt over the past 30 years.

**II.  The Defendant Presents No Legal Basis to Suppress Physical Evidence**

The defendant briefly argues that the property he took from the U.S. Capitol building is abandoned property. ECF No. 27 at 5. However, this argument is misplaced in a motion to suppress

---

[1] At the request of the Court, the United States can produce a copy of the video and audio-recorded interview, as well as unredacted exhibits, for *in camera* review.

and better reserved for trial. Similarly, the defendant asks to suppress "physical evidence found on social media." However, the defendant fails to articulate any argument as to why any physical evidence should be suppressed.

### III. A Hearing is Unnecessary to Resolve the Issues Raised in this Motion

The defendant has presented no showing to conclude that his post-arrest interview was improper in any manner whatsoever. As such, there is no need for a pre-trial hearing to address any issue raised in the motion to suppress, and the defendant has identified no authority that a hearing is procedurally appropriate.

### <u>CONCLUSION</u>

For the foregoing reasons, the defendant's motion to suppress should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ *Andrew J. Tessman*
Assistant United States Attorney
District of Columbia – Detailee
West Virginia Bar No. 13734
300 Virginia Street
Charleston, WV 25301
(304) 345-2200
Andrew.Tessman@usdoj.gov

/s/ *Joseph McFarlane*
PA Bar No. 311698
United States Department of Justice
1400 New York Ave NW
Washington, D.C. 20005
Desk: (202) 514-6220
Mobile: (202) 368-6049
joseph.mcfarlane@usdoj.gov