UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-642 (JDB) |
| | : | |
| DARRELL NEELY, | : | |
| | : | |
| Defendant. | : | |

### MOTION IN LIMINE RE: AUTHENTICATION AND ADMISSIBILITY OF DOCUMENTARY, PHOTOGRAPHIC AND VIDEO EVIDENCE

The United States of America hereby moves this Court, *in limine*, for a ruling that the identified photographic, video, and documentary evidence is properly authenticated under Federal Rules of Evidence 104, 901, and 902 and is admissible. The government anticipates introducing video footage of some of the Congressional Electoral College certification proceedings, including the point when the rioters breached the Capitol Building, and after they reconvened to finish the Electoral College certification hours later. The government further anticipates introducing documentary evidence from the Congressional Record, approved and signed Congressional Resolutions concerning the Electoral College Certification Process, as well as the actual constitutional and statutory authority for the Electoral College Certification proceedings, of which the Court can take Judicial Notice.

### I.     BACKGROUND

On January 6, 2021, Congress assembled in a Joint Session at the United States Capitol to declare the winner of the 2020 presidential election by reviewing and certifying the Electoral College ballots. The defendant entered the Capitol where the Congressional proceedings were occurring.

The case is currently scheduled for trial on October 5, 2022. The government anticipates introducing a number of video clips as evidence, including CCTV and videos defendant himself took, as well as documentary evidence. This motion relates to the authenticity, and admissibility, of video footage of some of the events that took place in the House and Senate Chambers on January 6, 2021. This motion also relates to the authenticity, and admissibility, of documentary evidence. Namely, portions of the Congressional Record and at least one Congressional Resolution concerning the Electoral College Certification on January 6, 2021.

II.     **ARGUMENT**

    A.     **Judicial Notice of Federal Electoral College Certification Law**

The government requests that the Court take judicial notice of, and admit into evidence, copies of Article II, Section 1 of the Constitution of the United States, the Twelfth Amendment, as well as 3 U.S.C. §§ 15-18 relating to the Electoral College Certification Official Proceedings, the Senate Concurrent Resolution, and the Congressional Record for both the House and Senate. *See Exhibits Cong - 1- 4.* The proceedings that took place on January 6, 2021 were mandated by, and directed under the authority of, several constitutional and federal statutory provisions. In fact, as Vice President Pence gaveled the Senate to Order on January 6, 2021 to proceed with the Electoral College Certification Official Proceeding, he quoted directly from, and cited to, 3 U.S.C. § 17. It is well established that district courts may take judicial notice of law "without plea or proof." *See United States v. Davila-Nieves*, 670 F.3d 1, 7 (1st Cir. 2012). The government makes this request even though the District of Columbia Court of Appeals has said that "[i]nsofar as the requests pertain to public laws, no motion is required in order for the court to take judicial notice."  *See Moore v. Reno*, No. 00-5180, 2000 U.S. App. LEXIS 35425; 2000

2

WL 1838862 (D.C. Cir., Nov. 14, 2000).   Further, "where a federal prosecution hinges on an interpretation or application of state law, it is the district court's function to explain the relevant state law to the jury." *See United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40, 49 (1st Cir. 2004).

### B.   Authentication of Congressional Video

On January 6, 2021, much of the proceedings taking place on the Senate, and House, floor were contemporaneously recorded by the Senate Recording Studio.   The Senate Recording Studio's purpose is to serve the Senate.   The Broadcast Studio is comprised of Senate TV, Hearing Rooms, and a Studio function.   Senate TV is comprised of eight cameras which record activity occurring on the Senate floor. This footage is also broadcast through the Cable-Satellite Public Affairs Network (CSPAN).   The Senate Studio can also capture contemporaneous footage of the House of Representative proceedings when there are Joint sessions of Congress, that is used for broadcast.   The Senate Recording Studio recorded at least three events relevant to this trial: Vice President Michael Pence gaveling the session to order and reading from Senate Congressional Resolution 1 and 3 U.S.C. § 17 in conjunction with the official proceedings of the Electoral College Certification, The Senate being gaveled into recess as Senator Lankford is told that the protestors are in the building and the resulting evacuation of the Senate Floor Chamber, and the Joint Session of Congress reconvening to finish the Electoral College Certification hours later, after the rioters have been cleared from the U.S. Capitol.   The Government intends to offer into evidence a Congressional montage establishing a timeline of these proceedings, or digital copies of clips from the montage as exhibits.   Screen captures of some of the montage are shown below:

Electoral College Certification Proceedings:

 

Senate Floor when Rioters Enter the Capitol Building:

 

Joint Session when Congress Reconvenes:



"Authentication and identification are specialized aspects of relevancy that are necessary conditions precedent to admissibility." *United States v. Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988) quoting *United States v. Blackwell*, 694 F.2d 1325, 1330 (D.C. Cir. 1982). "All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what its proponent claims it to be." *In re: Japanese Elec. Prods.*, 723 F.2d 238, 286 (3d Cir. 1983), *rev'd on other grounds, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). As the Third Circuit Court of Appeals has noted, "The burden of proof for authentication is slight." *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir. 1985). Once a *prima facie* showing has been made, if authenticity is disputed, the dispute is to be resolved by the jury. *United States v. Goichman*, 547 F.2d 778, 784 (3d Cir. 1976); *United States v. McGlory*, 968 F.2d 309, 328-29 (3d Cir. 1992). Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides

5

a non-exhaustive list of examples of evidence that satisfies this requirement.

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992). *See also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases). *See also, e.g., United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (*quoting United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a prima facie showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017).

The *Blackwell* case involved a prosecution for unlawful possession of firearms. The photographs in question depicted the defendant holding a firearm, apparently the same as one of the guns seized at the time of his arrest. The prosecution had obtained the photographs as the result of a search of the same room in which the firearms were found.   No witness could testify as to

when the photographs were made, where they were made, by what process, or whether they fairly and accurately depicted any particular scene on any particular date. The detective who conducted the search did testify that the details of the pictured weapon and the background interior were similar to the details of the weapon and room in question.  In upholding the admission of the photographs, the United States Court of Appeals for the District of Columbia utilized the same authentication and identification analysis as they would have with reference to the contents of any documentary evidence.  *Rembert*, 863 F.2d at 1026.  That is, the Court required only that "the proponent of documentary evidence make a showing sufficient to permit a reasonable juror to find that the evidence is what its proponent claims." *Blackwell*, 694 F.2d at 1330.

In considering the ATM photographic evidence at issue in *Rembert*, The Court of Appeals for the District of Columbia expanded the foundations that can support the authentication of photographic and video evidence.  In *Rembert*, the sole authenticating witness for the photos was a supervisor in the loss control division of the bank whose ATM machine was used in the crime. The witness testified that she was in charge of investigating questioned activities through the ATM machines.  She testified that the machine-maintained records at the branch showed an unusual pattern of use associated with the victim's ATM card on July 26, 1987.  The machine's records indicated that the card had been entered ten times on that occasion and was retained by the machine on the tenth attempt.  She further testified that video cameras are maintained at each of the three ATM machines at the branch location.  A video recorder taped the view from each camera in sequence, rotating to the next camera, taking a photograph every three seconds. This videotaping process imprints the date and time at which the pictures were made on the resultant photographs. She then identified a strip of pictures which was admitted into evidence over the defendant's

objection. The witness testified that she had viewed the original videotape and the resultant photographs and that the photographs were fair and accurate depictions of what was on the videotape. On cross examination, she testified that she had no personal knowledge of the events that transpired at the Seat Pleasant location on that date, and could not say from her own knowledge whether the photographs fairly and accurately depicted the scene and events at that time and place or not. *Rembert*, 863 F.2d at 1026. The Court upheld the admission of the photographs, holding:

> Consistent with our decision in *Blackwell* and the teachings of our sister circuits and the courts of the several states, we conclude that the contents of photographic evidence to be admitted into evidence need not be merely illustrative, but can be admitted as evidence independent of the testimony of any witness as to the events depicted, upon a foundation sufficient to meet the requirements of Federal Rule of Evidence 901(a). In this case the circumstantial evidence provided by the victim witnesses as to the occurrences at the ATM machines, together with the testimony of [the bank supervisor] as to the loading of the cameras and the security of the film, coupled with the internal indicia of date, place, and event depicted in the evidence itself provide ample support for the District Court's exercise of its discretion. Just as the Ninth Circuit held that the contents alone provided sufficient circumstantial evidence for the authentication of the photographs in *Stearns*, so do the contents of the photos in the instant case supply any further need for authentication that the contact prints from the ATM machine may require on the present record.

Id. at 1028.

Courts, both federal and state, have modernized their standards for admissibility of photographic evidence. *Rembert*, 863 F.2d at 1026, *United States v. Taylor*, 530 F.2d 639 (5th Cir. 1976). Moreover, cases expanding the foundation appropriate to make photographic evidence admissible within the discretion of the trial court are legion. *Rembert*, 863 F.2d at 1026.

1. **FRE 104 Offer of Proof in Support of Authentication**

The government offers significant evidence in support of authenticity pursuant to Federal Rule of Evidence 104. Federal Rule of Evidence 104 provides, in part, that:

> (a) In General. The court must decide any preliminary question about whether a witness is qualified, a privilege exists, *or evidence is admissible*. In so deciding, the court is not bound by evidence rules, except those on privilege.

Fed. R. Evid. (a) (emphasis added). *See United States v. Demosthene*, 326 F. Supp. 2d 531 (S.D. N.Y. 2004) ("When ruling on the admissibility of evidence, a court is not bound by the federal rules of evidence and may rely upon hearsay and other reliable evidence. *See* Fed. R. Evid. 1101(d)(1); 104(a)" in holding that "the Court finds that it properly relied upon the police reports . . . in ruling on the parties' motions in limine").

### 2. The video clips are self-authenticating under FRE 902(5)

The video footage is self-authenticating under Federal Rule of Evidence 902(5). Federal Rule of Evidence 902(5) provides, in part, that:

> The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:
> . . .
> (5) Official Publications. A book, pamphlet, or other publication purporting to be issued by a public authority

Fed. R. Evid R 902. The video feed from which the clips are taken are available on the Senate.gov website. *See* https://floor.senate.gov/MediaPlayer.php?view_id=2&clip_id=3993, last accessed on Oct. 20, 2021. Moreover, the declaration of Diego Torres from the Senate Recording Studio establishes the video as an official publication. It is well established that materials found on a government public website are self-authenticating under Federal Rule of Evidence 902(5). *See Williams v. Long*, 585 F. Supp. 2d 679, (D. Md. 2008). See also Singletary v. Howard Univ., No. 1:17-cv-01198, 2018 U.S. Dist. LEXIS 164945, 2018 WL 4623569 (D.D.C., Sept. 26, 2018), *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486 (S.D.N.Y. 2017) (Congressional transcripts self-authenticating under FRE 902(5).

### 3. Authentication pursuant to Fed. R. Evidence 901

The video clips of the Senate and Joint Session proceedings are separately authenticated under Federal Rule of Evidence 901. Diego Torres is a broadcast technician who works at the Senate Recording Studio. He was present on January 6, 2021, and worked to preserve the integrity of the video. As his declaration makes, clear, the video system is a closed system and not subject to outside influences or manipulation. He has reviewed the video feed and attests to its authenticity and accuracy. See declaration of Diego Torres attached as Exhibit 7. That alone is sufficient to authenticate the video footage. *See Rembert*, 863 F.2d at 1026.

### 4. Third Party Authentication – witnesses can authenticate the video, if need be

Any witness who witnessed the events depicted in a photograph, or recorded in a video, can authenticate the evidence. Courts have ruled that "the evidentiary foundation 'may, but need not be, supplied by the person taking the photograph ***or by a person who witnessed the event being recorded***.'" *Id*., *see also United States v. Blackwell*, 694 F.2d 1325, 1330 (D.C. Cir. 1982) (police officer present during search and seizure of photograph properly authenticated photograph). The District Court in *Taylor* went on to emphasize that a stricter rule:

> would ignore a fundamental principle underlying authentication emphasized in *Goldsmith*. In making the initial authenticity determination, the court need only conclude that *a prima facie* showing has been made that the photograph is an accurate representation of what it purports to depict. The ultimate determination of the authenticity of the evidence is for the trier of fact, who must consider any rebuttal evidence and balance it against the authenticating evidence in order to arrive at a final determination on whether the photograph, in fact is authentic.

*Id*. Here, any witness present during the events recorded, or photographed, can testify that the events recorded or photographed appear to accurately show the events that took place. That threshold showing is sufficient to authenticate any video recording or photograph, with the finder

10

of fact left to determine what weigh should be given to the evidence.

Moreover, any of the individuals depicted in the videos can authenticate the video, even if they do not have an independent recollection of the encounter. *Penn v. Detweiler*, No. 1:18-CV-00912, 2020 U.S. Dist. LEXIS 38634, 2020 WL 1016203 (E.D. PA, Jan. 22, 2020). *See also Vazquez v. City of Allentown*, 689 F. App'x 695, 700 (3d Cir. 2017).

  **C.**  **Authentication of the Congressional Record and S. Con. Res 1**

The Congressional proceedings on January 6, 2021 were also memorialized in the Congressional Record. The Congressional Record is also a public record under Federal Rule of Evidence 902(5). *See MMA Consultants 1, Inc. v. Republic of Peru,* 245 F. Supp. 3d 486 (S.D.N.Y. 2017) (Congressional transcripts self-authenticating under FRE 902(5)). The government intends to introduce portions of the Congressional Record at trial. *See* Exhibits 5-6.

WHEREFORE, the government respectfully requests that this Court grant the motion for a pre-trial determination that the aforementioned exhibits are authentic and the Federal Rules of Evidence and admissible at trial.

          Respectfully submitted,

          MATTHEW M. GRAVES
          United States Attorney
          D.C. Bar No. 481052

     By:  */s/ Andrew J. Tessman*
         Assistant United States Attorney
         District of Columbia – Detailee
         WV Bar No. 13734
         300 Virginia Street
         Charleston, WV 25301
         (304) 345-2200
         Andrew.Tessman@usdoj.gov

*/s/ Joseph McFarlane*
PA Bar No. 311698
United States Department of Justice
1400 New York Ave NW
Washington, D.C. 20005
Desk: (202) 514-6220
Mobile: (202) 368-6049
joseph.mcfarlane@usdoj.gov
