UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**DARRELL F. NEELY,**<br><br>Defendant. | Criminal Action No. 21-642 (JDB) |

# ORDER

Defendant Darrell Neely was arraigned on a new indictment on October 24, 2022. See Oct. 24, 2022 Min. Entry. Neely was initially arrested in October 2021 but was released from detention pending trial shortly afterwards. See Oct. 18, 2021 Order [ECF No. 6]. For a year, this case proceeded towards an October 5, 2022 trial date. In late August 2022, however, Neely left Washington, D.C. without informing the Pretrial Services Agency ("PSA") and stopped contacting his PSA officer. See Pretrial Violation Report [ECF No. 46] at 2. This travel set off a series of motions and hearings as to Neely's whereabouts, which ultimately concluded with this Court ordering Neely's arrest on September 21, 2022. See Sept. 21, 2022 Min. Entry. Neely was arrested in North Carolina shortly after, and the government filed a superseding indictment on October 12, 2022. See Indictment [ECF No. 61]. At the October 24 hearing, Neely was arraigned on that indictment and, upon the government's oral motion, the Court ordered that he be detained pending trial. This Order sets forth the reasons for the detention order as required by the Bail Reform Act of 1984, 18 U.S.C. § 3141, et seq. See 18 U.S.C. § 3142(i)(1) ("[T]he judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention . . . .").

1

## LEGAL STANDARD

The Bail Reform Act "authorizes detention of a defendant pending trial, but only in certain, limited circumstances." United States v. Dawodu, Crim. A. No. 21-163 (JDB), 2022 WL 1556403, at *3 (D.D.C. May 17, 2022). Following a detention hearing, a court "shall order" a defendant detained pending trial if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In making that determination, courts consider four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community posed by the defendant's release. Id. § 3142(g); see also, e.g., United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996) (applying the factors). In general, the government bears the burden to justify pretrial detention: it must demonstrate that the "defendant is a flight risk . . . by a preponderance of the evidence, or that he poses a danger to the community by clear and convincing evidence." United States v. Ali, 793 F. Supp. 2d 386, 387 (D.D.C. 2011); see also United States v. Vasquez-Benitez, 919 F.3d 546, 551 (D.C. Cir. 2019) ("A determination that an individual is a flight risk must be supported by a preponderance of the evidence.").

## ANALYSIS

The government has shown by a preponderance of the evidence that Neely is a flight risk and that no conditions will reasonably assure his appearance as required. In particular, the third factor—the defendant's history and characteristics—strongly suggests that Neely should be detained pending trial due to his risk of flight.

The events of the last two months illustrate this risk. On August 29, 2022, PSA filed a violation report notifying the Court that Neely "has failed to report to PSA for the last three weeks and is considered a loss of contact." Pretrial Violation Report at 2. The report detailed PSA's unsuccessful attempts to call Neely and PSA's belief that Neely had traveled to South Carolina without alerting PSA. See id. On the same day, Neely's attorney requested an extension of time to reply to the government's responses to motions filed by Neely, noting that she had been unable to reach Neely to discuss the replies. Mot. for Extension of Time [ECF No. 45] at 1. The Court granted the extension, Sept. 7, 2022 Min. Order, but Neely's attorney was still unable to meet with him to discuss the replies, Notice of Filing [ECF No. 59] at 1. During this time, the government informed the Court that the Federal Bureau of Investigation had information suggesting Neely had money from the sale of property in Washington, D.C., and he was planning to "flee using [those] funds." Mot. to Revoke Def.'s Pretrial Release & Req. for Immediate Hr'g [ECF No. 54] at 1. In response, the Court ordered Neeley to appear in person for a hearing on September 13. Sept. 6, 2022 Order [ECF No. 57] at 2. Neely, however, did not appear. Sept. 13, 2022 Min. Entry. He instead called his attorney—which was the first she had heard from him in days—a few minutes before the hearing began, suggesting he knew how to contact her and when the hearing was. Neely informed the Court (over the phone) that he had been hospitalized following a car accident in North Carolina and assured the Court that he would appear at a later hearing, agreeing to a September 21 date. But on September 21, Neely was nowhere to be found, and the Court ordered his arrest. Sept. 21, 2022 Min. Entry.

Evidence of past flight strongly suggests that a defendant may be a flight risk in the future. See, e.g., United States v. Guerra-Hernandez, 88 F. Supp. 3d 25, 26–27 (D.P.R. 2015) ("[T]he fact that the defendant pulled a disappearing act and sailed to the Dominican Republic when he should

3

have appeared in court as agreed . . . clearly gravitates toward . . . finding that he is a risk of flight."); cf. United States v. Anderson, 384 F. Supp. 2d 32, 36 (D.D.C. 2005) (finding defendant a flight risk based on, among other things, "strong circumstantial evidence of his clear interest in fleeing the jurisdiction and his intent to do so"). As detailed above, Neely fled the jurisdiction and failed to appear at two hearings. He was aware of those two hearings—in fact, he tried to call in to one of the hearings—yet made no effort to attend or give the Court advance notice of his inability to attend. His absenteeism has unnecessarily delayed the case, which was supposed to go to trial on October 5. His attorney has been unable to meet with him to discuss motions or case strategy, further delaying the case. See, e.g., Notice of Filing (notifying the Court that "replies to Government responses will not be filed by the defendant today as undersigned counsel has not had the opportunity to meet with Mr. Neely"). Neely's repeated disregard for orders of the Court and his unwillingness to appear for hearings or meetings with his attorney convinces the Court that, even if his movements were monitored by PSA, he would be unlikely to appear when required in the future.

      The other three factors do not change that conclusion. First, the nature and circumstances of the crime are, at best, neutral for Neely. Courts in this District have adopted a multifactor test to assess the relative severity of charges in January 6 Capitol riot cases: whether the defendant

> (1) has been charged with felony or misdemeanor offenses; (2) engaged in prior planning before arriving at the Capitol; (3) carried or used a dangerous weapon during the riot; (4) coordinated with other participants before, during, or after the riot; or (5) assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct; and (6) the nature of the defendant's words and movements during the riot, including whether he damaged or attempted to damage federal property, threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot.

United States v. Padilla, 538 F. Supp. 3d 32, 40 (D.D.C. 2021) (cleaned up) (quoting United States v. Chrestman, 525 F. Supp. 3d 14, 26–27 (D.D.C. 2021)).

There is no allegation that Neely carried or used a dangerous weapon during the riot; that he coordinated with others before, during, or after the riot; or that he assumed a leadership role during the riot. However, the superseding indictment charges Neely with a felony, and the allegations as to Neely's "words and movements during the riots" and afterwards suggest that his behavior was worse than many others' at the Capitol that day. Video footage shows Neely evidently "holding a marijuana cigarette" in the Capitol, and the government reports that Neely stole china plates and a U.S. Capitol Police jacket, badge, name tag, and baseball cap. See Statement of Facts [ECF No. 1-1] at 2–3. In the days following January 6, Neely broadcast a radio show that he hosts wearing the stolen baseball cap and "continued to boast" about stealing the items. Id. at 3–4. These facts alone may not justify detention (and in fact, Neely was initially not detained), but they do not support release in light of the strong evidence that Neely is a flight risk.

The second factor, the weight of the evidence against the defendant, weighs in favor of release as well. The government's evidence includes video footage of Neely in the Capitol on January 6, multiple witnesses, and Neely's own representations on his radio show. Cf. Padilla, 538 F. Supp. 3d at 43 (finding there was "strong evidence" against the defendant—consisting of videos of him in the Capitol, witnesses, and social media postings—that weighed in favor of pretrial detention).

As to the final factor, the government has not proven that there is a real "danger to any person or the community that would be posed by the [defendant's] release," 18 U.S.C. § 3142(g)(4). However, the government need not prove both that Neely is a flight risk and a danger to the community. See, e.g., Ali, 793 F. Supp. 2d at 387 (explaining that, to meet its burden, the government "must demonstrate that the defendant is a flight risk . . . or that he poses a danger to

5

the community" (emphasis added)).  The Court's detention decision is based on Neely's likelihood to flee, not his potential danger to the community.  Thus, this factor is not dispositive.

*   *   *

For the foregoing reasons, and for the reasons stated on the record at the October 24, 2022 hearing, it is hereby

**ORDERED** that the government's oral motion for detention pending trial is **GRANTED**; it is further

**ORDERED** that defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; it is further

**ORDERED** that defendant be afforded reasonable opportunity for private consultation with counsel; and it is further

**ORDERED** that on order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED.**

/s/<br>JOHN D. BATES<br>United States District Judge

Dated: October 25, 2022