UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DARRELL NEELY,<br>Defendant. | Criminal Action No. 21-642 (JDB) |

# ORDER

Defendant Darrell Neely is charged via indictment with six offenses related to the breach of the U.S. Capitol on January 6, 2021.  Before the Court are four motions in limine: (1) Neely's motion to exclude evidence of others' conduct, (2) the government's motion to preclude certain arguments related to the media, (3) the government's motion to limit questioning about a woman Neely was with while in the Capitol, and (4) the government's motion to preclude various defense arguments.  For the reasons explained below, the Court will deny Neely's motion, grant the government's motion to preclude arguments related to the media, defer ruling on the government's motion to limit questioning about the woman who accompanied Neely into the Capitol, and grant in part and deny in part the government's motion to preclude certain defense arguments.

## Background

On January 6, 2021, the U.S. Congress was convened in the Capitol for a joint session to certify the Electoral College vote count from the November 2020 presidential election.  Statement of Facts [ECF No. 1-1] at 1.  The Capitol was closed to the public, and the U.S. Capitol Police ("USCP") had erected temporary and permanent barricades around the exterior of the Capitol.  Id.  A large crowd gathered outside the barricades, and around 2:00 p.m. members of the crowd violently forced their way into the Capitol, past officers of the USCP and over or through barricades.  Id.  Shortly after, members of the U.S. House of Representatives and U.S. Senate, as

1

well as then-Vice President Michael Pence, were forced to evacuate and effectively suspend the joint session. Id.; see also United States v. McHugh, 583 F. Supp. 3d 1, 7–9 (D.D.C. 2022) (further describing the violence and destruction on January 6).

A few days after January 6, the FBI received a tip that Neely was among the crowd of people who forced their way into the Capitol on January 6. Statement of Facts at 2. The FBI identified Neely in video footage from the Capitol and interviewed witnesses who had communicated with Neely about his participation in the Capitol riot. Id. at 2–3. The government reports that in the days following January 6, Neely bragged about stealing items from the Capitol on his streaming radio show called the "Global Enlightenment Radio Network," Mot. to Dismiss Information [ECF No. 31] ("Mot. to Dismiss Case") at 2, and broadcast his show wearing a USCP baseball cap, Statements of Facts at 3–4.

Neely is charged via indictment with six offenses: civil disorder and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Count One); theft of government property, in violation of 18 U.S.C. § 641 (Count Two); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Three); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Four); violent entry and disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five); and parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Six). See Indictment [ECF No. 61].

Neely and the government each filed numerous motions in limine. At the February 9, 2023 status conference, the parties represented that only four of those motions still required resolution by the Court: Neely's motion to exclude evidence of others' conduct, Def.'s Mot. in Lim. to Exclude Evid. Concerning Conduct by Others [ECF No. 34] ("Neely Mot."); the government's motion to preclude certain arguments related to the media, Gov't's Mot. in Lim. to Preclude Evid.

& Arg. Related to Cases Against Members of the News Media [ECF No. 47] ("Gov't Media Mot."); the government's motion to limit questioning about a woman Neely was with while in the Capitol, Gov't's Mot. in Lim. to Limit Quest. & Arg. Regarding the Woman with Whom Def. Entered the Capitol [ECF No. 48] ("Gov't Pink Beret Mot."); and the government's motion to preclude various arguments by Neely, Mot. in Lim. to Preclude Certain Def. Arg. [ECF No. 50] ("Gov't Mot. to Preclude Defenses").  All four motions are fully briefed and ripe for decision.

## I. Neely's Motion to Exclude Evidence of Others' Conduct

Neely seeks to exclude "all evidence concerning conduct and statements of others who may have been in [his] general vicinity on January 6." Neely Mot. at 1.  He argues that "an aiding and abetting theory" requires that Neely have "full and advance knowledge of the crime [he] allegedly facilitated" and argues that because he "had no advance notice" of "other actors' obstructions of official proceedings," "evidence of any conduct of other people in the Capitol building that [he] did not know about in advance of his own actions is not relevant." Id. at 2–4.  Even if relevant, he argues, "its probative value is outweighed by the potential for unfair prejudice and [the evidence] should be excluded under Fed. R. Evid. 403." Id. at 4–5.

The government responds that "[t]he actions of other rioters within the mob are relevant in all January 6 cases due to the nature of the event." Gov't's Opp'n to Neely Mot. [ECF No. 42] at 5.  Such evidence is "consequential to a specific defendant's mental state, knowledge[,] and opportunity to commit the charged crimes." Id.  The government contends that Neely "heard and saw other rioters discussing their intent to enter the U.S. Capitol building and disrupt the Congressional proceeding counting the votes of the Electoral College." Id. at 6.

This issue has arisen in other January 6 cases, and this Court has previously ruled that contextual evidence "showing the actions of the crowd and the pressures facing law enforcement is certainly relevant" to some charges arising out of January 6.  Order at 2, United States v.

3

Sheppard, No. 21-203 (JDB) (D.D.C. Jan. 6, 2023), ECF No. 66 ("Sheppard Order").  As noted in Sheppard, "the government cannot fully explain the actions of [the defendant] and those around him without showing the jury the context of the day."  Id. at 3; see also Mem. & Order at 2–3, United States v. Gillespie, No. 22-60 (BAH) (D.D.C. Nov. 30, 2022), ECF No. 43 ("Gillespie Order") ("All such 'general evidence' about the events on January 6 assists the jury in better understanding the parties' actions that day and thus the alleged criminal conduct of defendant.").

Such evidence is relevant to each offense charged.  Most obviously, it is relevant to the mens rea element of each offense—Neely's awareness of the "chaos, . . . the pressures facing law enforcement[,] and the sheer force of his fellow demonstrators" is relevant to whether he knew the area was restricted or intended to act in a certain way.  See Sheppard Order at 3.  It is also relevant to other elements—for example, the government charges him in Count One with civil disorder in violation of 18 U.S.C. § 231(a)(3), which requires the government to show that Neely

> committed [or] attempted to commit any act to obstruct, impede, or interfere with a law enforcement officer, lawfully engaged in the lawful performance of his/her official duties, incident to and during the commission of a civil disorder, which in any way [or] degree obstructed, delayed, [or] adversely affected . . . the conduct and performance of any federally protected function.

Indictment at 1.  "[C]ivil disorder" is defined as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."  18 U.S.C. § 232(1).  As the Gillespie court reasoned,

> [p]lainly, others' actions on January 6 at the Capitol in combination with defendant's own actions are relevant to whether a federally protected function . . . was obstructed, delayed, or adversely affected and whether the events on January 6 constitute a public disturbance involving the violence of three or more people and posing dangers to people and property.

Gillespie Order at 3–4.

Neely is correct that some such "context" evidence, even if relevant, may prejudice jurors by causing them to improperly impute the "flagrant, provocative[,] and violent actions of others" to Neely. Neely Mot. at 5. Even so, prejudicial evidence is inadmissible under Rule 403 only if the evidence's "probative value is substantially outweighed by a danger of," among other things, "unfair prejudice." Fed. R. Evid. 403. Because it is not the case that all evidence of others' actions will be unduly prejudicial, the Court will deny the motion as overbroad and premature. However, the parties should confer to determine if there are specific pieces of evidence for which the unfair prejudice substantially outweighs the probative value—for example, videos of violence in parts of the Capitol where Neely is not alleged to have been—and which should accordingly be excluded. If there are still disputes remaining after the parties confer, Neely may challenge particular proposed exhibits during trial outside the presence of the jury.

**II.     Government Motion to Preclude Argument Related to the Media**

The government suggests that Neely may argue that "he should not have been charged in this case because he is a member of the news media" and that he may seek to support that argument with evidence that other members of the media were not charged. Gov't Media Mot. at 2. The government contends that such an argument would in effect "be an argument based on selective prosecution," which "implicates 'an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which []he was charged.'" Id. at 2–3 (quoting United States v. Washington, 705 F.2d 489, 495 (D.C. Cir. 1983)). Accordingly, the government moves to "preclude evidence or argument at trial about the status, disposition, pendency, or lack of charges related to cases against members of the news media arising out of the events of January 6, 2021." Id. at 1.

Neely responds that he "intends to present evidence of his employment" but "has no intention of arguing any facts regarding others 'which would implicate procedural events occurring

5

after January 6,'" including decisions to prosecute.  Def.'s Resp. to Gov't Media Mot. & Gov't Mot. to Preclude Defenses [ECF No. 71] ("Neely Resp.") at 1.

The Court agrees that evidence related to charging decisions concerning members of the media is not relevant to Neely's guilt or innocence, and Neely represents that he does not intend to introduce any such evidence.  The Court will accordingly grant the government's motion.

**III.    Government Motion to Limit Questioning About Woman in Pink Beret**

Video footage shows that Neely walked into the Capitol alongside an unidentified woman wearing a pink beret.  See Gov't Pink Beret Mot. at 2; Def.'s Resp. to Gov't Pink Beret Mot. [ECF No. 72] ("Resp. to Pink Beret Mot.") at 9.  They walked around the Capitol together, and, according to Neely, the woman "immediately turn[ed] around when Neely [wa]sn't looking" and "r[an] to the escalator shaft," "duck[ed] down," "remove[d] her beret, and continue[d] up the escalator in a crouched position." Id. at 10–11.  The government asks the Court to preclude Neely from "ask[ing] questions or mak[ing] argument" at trial that the woman "was a member of law enforcement."  Gov't Pink Beret Mot. at 1.

Neely's opposition repeatedly suggests that the woman in the pink beret may be a government informant.  See Resp. to Pink Beret Mot. at 16 (claiming that the evidence "warrants inquiry about whether Pink Beret was somehow part of the planning of the Capitol breach as a government agent or cooperator").  In service of his theory, Neely tracks the woman's movements across the Capitol grounds and building, identifies each piece of clothing she was wearing, and makes provocative assertions about her behavior and motivation on January 6, such as, "Why befriend a stranger only to mysteriously ditch him?" id. at 11, "[Neely] needs to understand if he was targeted by her that day and for what purpose," id. at 15, and, "She had associates in the building that day and seemed to have information well beyond that of a normal citizen there to protest," id.  He also asserts that she may have information favorable to the defense.  He

6

accordingly asks the Court to order the government to identify the woman and allow him to cross-examine government witnesses about her identity.  Id. at 17.

The government, for its part, asserts that it has no evidence that the woman was a member of law enforcement.  See Gov't Pink Beret Mot. at 3; cf. Gov't's Reply Br. in Supp. of Gov't Pink Beret Mot. [ECF No. 78] at 2 (arguing that Neely's "conclusion that this woman must be a member of law enforcement" is "an improbable flight of fancy" (internal quotation marks omitted)).

Two issues are thus teed up by the government's motion and Neely's response: (1) whether the government has an obligation to identify the woman in the pink beret; and (2) whether Neely should be permitted to cross-examine government witnesses at trial about whether she is a government agent.

In some circumstances, identification of potential defense witnesses is required by Brady v. Maryland, 373 U.S. 83 (1963).  See, e.g., Leka v. Portuondo, 257 F.3d 89, 103 (2d Cir. 2001) (holding that government's functional disclosure of individual with information helpful to the defense on the eve of trial "suppressed" potential witness's testimony under Brady); United States v. Barnes, 486 F.2d 776, 779–80 (8th Cir. 1973) ("[W]here the informant is shown to be a material witness and the government does not plan to use the informant as a witness it owes a duty to make every reasonable effort to have the informant made available to the defendant to interview or use as a witness, if desired." (footnote omitted)).

However, "[c]riminal defendants are only entitled to statements of non-testifying witnesses . . . if those statements qualify as Brady material."  United States v. Edelin, 128 F. Supp. 2d 23, 33 (D.D.C. 2001).  To qualify as Brady material that requires disclosure, the evidence must be (1) material, meaning there is a "reasonable probability" that it would impact the outcome of the proceeding, United States v. Bagley, 473 U.S. 667, 682 (1985), and (2) "in [the government's] possession," United States v. Trie, 21 F. Supp. 2d 7, 23 (D.D.C. 1998).

7

Neely suggests that the woman's testimony would be material because she "would be able to testify that" (1) "Neely did not steal anything while inside the Capitol," (2) "the police items were returned to the officer in the Crypt," (3) he "was never told by the officers they encountered to leave the building," and (4) "he informed officers he was a journalist and was attempting to live stream for his media channel."  Resp. to Pink Beret Mot. at 16.  Based on this "proffer" of possible testimony, the woman in the pink beret may have exculpatory information —most likely related to the theft charge against Neely.  If there is a basis to believe that she could so testify and her identity (and presumably statements)[1] are within the government's possession—i.e., if it knows who she is—the government may be required to identify her.

However, Neely's motion does not give the Court enough information to establish that this woman does, in fact, have exculpatory information.  Indeed, the "proffer" of possible testimony is no more than speculation—it does not seem to represent likely evidence.  The Court thus intends to probe at the May 10, 2023 pretrial conference whether there is a basis for Neely's proffer of what the witness would testify to.  Neely must be able to explain why the testimony would be material—a higher bar than mere relevance[2]—and provide the Court with a basis to believe that the witness would so testify.  If, and only if, that proffer is adequate, the Court will probe whether

---

[1] Depending on the government's familiarity with the woman—including whether she is a government actor—one could presume that it is aware of any potentially helpful testimony she might provide.  See Leka, 257 F.3d at 103 ("assum[ing] that the prosecutor knew the content of [the suppressed witness's] exculpatory testimony" when the witness was "a police officer [who] had witnessed the shooting").  The same presumption may not necessarily be present if the government knows of her identity simply because she had been investigated as another rioter.

[2] In almost all January 6 cases, the identity of a rioter with whom a defendant interacted would not fall under Brady.  For example, if Neely sought to identify people around him in hopes of eliciting testimony that he did not assault any officers, or yell, such evidence would almost certainly fall short of Brady evidence—it would be cumulative of video evidence, and not truly material to the charges against him.  The Court entertains Neely's request based primarily on the theft charge.  A witness who was present with Neely when he picked up the items may have material testimony given that offense's specific intent requirement.  See Morissette v. United States, 342 U.S. 246, 271 (1952) (defendant may not be guilty of theft of government property if he "truly believed" property was abandoned).  Even so, Neely must offer a more specific explanation of what she would testify to and how it would be material.

8

the government is aware of both her identity and what she could testify about. The parties should be prepared to discuss these issues at the pretrial conference.

The second issue—whether the defense may cross-examine government witnesses about the woman's alleged status as a government agent—will depend in part on that discussion. "Counsel . . . must demonstrate that 'the proposed line of cross-examination follow[s] a lead reasonably suggested by other facts in evidence.'" United States v. McCallum, 885 F. Supp. 2d 105, 117 (D.D.C. 2012), aff'd, 721 F.3d 706 (D.C. Cir. 2013) (quoting United States v. Lin, 101 F.3d 760, 768 (D.C. Cir. 1996)). Absent a specific basis to believe that this woman may have connections to law enforcement—and especially if the government represents that she does not—there would be no justification for that line of cross-examination of individual government witnesses, who are likely to have even less information about her status than the prosecution team investigating this case. Accordingly, the Court will defer ruling on the government's motion in limine regarding the woman in the pink beret.

**IV.   Government Motion to Preclude Potential Defenses**

The government's final motion in limine seeks an order precluding Neely from (1) arguing an entrapment-by-estoppel defense; (2) arguing that alleged law enforcement inaction made his conduct on January 6 legal; (3) presenting evidence of inaction by law enforcement officers of which he was not aware at the time; and (4) arguing that the property he took from the Capitol was abandoned. See Gov't Mot. to Preclude Defenses.

The Court will grant the government's first three requests, which are largely unopposed. First, as this Court and others have found, then-President Trump's speech on January 6 cannot be the basis for an entrapment-by-estoppel defense as "public authority and entrapment-by-estoppel defenses are available only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful," and "there is simply no indication that Trump informed the

9

protestors that [their actions] would be legal." Sheppard, 2022 WL 17978837, at *9 (D.D.C. Dec. 28, 2022).  Neely represents that he does not intend to argue entrapment-by-estoppel.  See Neely Resp. at 2.  The government's request will thus be granted.

Similarly, the government's second request—that Neely be precluded from arguing that any inaction by law enforcement made his conduct on January 6 legal—will also be granted. "Settled caselaw makes clear that law officer inaction—whatever the reason for the inaction—cannot sanction unlawful conduct." Mem. & Order at 3, United States v. Williams, Crim. A. No. 21-377 (BAH) (D.D.C. June 8, 2022), ECF No. 87 (citing Cox v. Louisiana, 379 U.S. 559, 569–70 (1965)) (denying similar motion in another January 6 case).

Third, evidence of law enforcement inaction that Neely himself did not perceive or was not aware of will be excluded as irrelevant.  See id. at 3–4 ("As a logical matter, however, any action or inaction of which defendant was not aware cannot possibly have had any effect on his state-of-mind and is inadmissible as irrelevant under Federal Rule of Evidence 401.").

Neely does not appear to directly oppose the government's law enforcement-related motions.  He notes only that evidence related to law enforcement conduct that he "observed and/or was made aware of . . . goes directly to his 'state of mind,'" which is relevant to the charges against him. Neely Opp'n at 3.  The Court agrees that some evidence of law enforcement action or inaction that Neely himself perceived or was otherwise aware of may be relevant—the rulings here do not preclude him from introducing any such evidence.  They preclude only (1) arguments that such inaction legalized his actions and (2) evidence of officer conduct of which Neely was not aware on January 6.

The government's final request in this motion is that the Court preclude Neely from arguing that the property he took from the U.S. Capitol was abandoned.  See Gov't Mot. to Preclude Defenses at 6.  "Abandonment is a defense to a prosecution brought under 18 U.S.C. [§] 641,"

10

United States v. Shackelford, 677 F.2d 422, 425 (5th Cir. 1982) (citing Morissette, 342 U.S. at 246), and Neely's response suggests he intends to argue this defense, see Neely Resp. at 3. "A defendant is only entitled to an instruction on a [affirmative defense] if there is 'sufficient evidence from which a reasonable jury could find' for the defendant on that theory." United States v. Nwoye, 663 F.3d 460, 462 (D.C. Cir. 2011) (quoting United States v. Akhigbe, 642 F.3d 1078, 1083 (D.C. Cir. 2011)).

A defendant "could not have knowingly converted property which he did not know could be converted, as would be the case if it was in fact abandoned or if he truly believed it to be abandoned." Shackelford, 677 F.2d at 425. At this point, however, Neely has presented no evidence from which a reasonable jury could find that the allegedly stolen property was abandoned or that Neely "truly believed" that it was.[3] See Morissette, 342 U.S. at 271.

The government alleges that a USCP Officer removed the stolen items (a jacket, badge, name tag, and cap) "during decontamination from lacrimal spray" during the chaos of January 6. See Statement of Facts at 3–4. One witness stated that Neely "boasted that he had attacked a USCP officer and had taken the USCP jacket, badge, name tag, and baseball cap from the officer." Id. at 3. He was seen after January 6 with the officer's items as well as four china plates Neely suggested he took from the Capitol. Id. The Court is not aware of analogous scenarios in which an abandonment instruction was warranted and Neely has presented none. Cf. Morisette, 342 U.S. at

---

[3] Neither side has proposed jury instructions for this count, so the Court will not address that here. However, other courts in this district have included in jury instructions a requirement "that the person intended to deprive, without right, the United States government of the use or benefit of the property." See, e.g., Final Jury Instructions at 34, United States v. Williams, Crim. A. No. 21-618 (ABJ) (D.D.C. Nov. 16, 2022), ECF No. 122 (emphases added).

The government nonetheless argues that Neely must establish "a good-faith basis to argue that the property in question was abandoned." Gov't's Reply Br. in Supp. of Gov't Media Mot. and Gov't Mot. to Preclude Defenses [ECF No. 77] at 6. But under 18 U.S.C. § 641, a jury must find that he had "criminal intent to steal or knowingly convert," meaning an honest belief that the property was abandoned—even if that belief is mistaken—could negate the required mens rea. Morissette, 342 U.S. at 271 ("[I]t is not apparent how Morrisette could have knowingly or intentionally converted property that he did not know could be converted, as would be the case if it was in fact abandoned or if he truly believed it to be abandoned and unwanted property.").

11

276 (instruction warranted for defendant who took bomb casings from government property as jury "might have concluded that the heaps of spent casings left in the hinterland to rust away presented an appearance of unwanted and abandoned junk"). However, the Court does not know the full extent of the evidence to be presented. Neely will have an opportunity during the pretrial conference and, if warranted, during trial to present "sufficient evidence from which a reasonable jury could find for [him] on that theory." Nwoye, 663 F.3d at 462 (internal quotation marks omitted). The Court will thus deny this request from the government without prejudice. The government may renew this motion at the pretrial conference and, if applicable, during the final jury instruction conference.

*   *   *

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [34] Neely's motion to exclude evidence of others' conduct is **DENIED** as overbroad and premature; it is further

**ORDERED** that [47] the government's motion to preclude evidence of cases against members of the media is **GRANTED**; it is further

**ORDERED** that the parties should be prepared to discuss [48] the government's motion to limit questioning and argument regarding the woman in the pink beret at the May 10, 2023 conference; it is further

**ORDERED** that [50] the government's motion to preclude certain defenses is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that the government's requests to preclude Neely from arguing entrapment-by-estoppel, arguing that law enforcement inaction made his conduct legal, and presenting evidence of law enforcement inaction that he was not aware of on January 6 (requests 1, 2, and 3 in ECF No. 50) are **GRANTED**; and it is further

12

**ORDERED** that the government's request to preclude Neely from arguing an abandonment defense (request 4 in ECF No. 50) is **DENIED** without prejudice.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: April 18, 2023